IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GREENSBORO DIVISON

CASE NO:

| | |
|---|---|
| EARL ALSTON,<br><br>Plaintiff,<br><br>v.<br><br>TERRY JOHNSON, in his official and individual capacity as Alamance County Sheriff, ALAMANCE COUNTY SHERIFF'S OFFICE<br><br>**Defendants.** | COMPLAINT |

NOW COMES Plaintiff Earl Alston, Jr. ("Plaintiff"), by and through undersigned counsel, and for his Complaint against Defendants Terry Johnson, the Alamance County Sheriff's Office, Alamance County, North Carolina, alleges and states as follows:

1. Plaintiff brings this action to redress violations of his rights under 42 U.S.C. §1981, 42 U.S.C. §1983, Title VII of the Civil Rights Act of 1964, and related federal statutes.

2. Plaintiff seeks damages and injunctive relief for race discrimination, hostile work environment, retaliation, and denial of equal employment opportunities arising from his employment with the Alamance County Sheriff's Office.

3. Plaintiff asserts that Defendants, acting individually and in concert, engaged in a pattern and practice of discrimination against African American employees, including Plaintiff, by denying promotions, stripping rank and pay, subjecting him to unsafe working conditions, and retaliating against him for opposing discriminatory practices.

4. Plaintiff files this Complaint to vindicate his rights, to obtain full relief for the harms suffered, and to interrupt the systemic discrimination and racism perpetuated by Defendants.

## INTRODUCTION

Plaintiffs Latasha Mebane, Jaleesa Alston, and Earl Alston bring this action for damages and injunctive relief against Defendants Terry Johnson, the City of Burlington, North Carolina, the Alamance County Sheriff's Office, and David Sykes.

The Alamance County Sheriff's Office ("ACSO"), located at 109 South Maple Street in Graham, North Carolina, employs approximately 298 individuals. As of April 2023, ACSO consisted of 152 sworn deputies, of whom only 9 were African American (representing approximately 5%). Within the detention division, there were 93 detention officers, of whom 29 were African American (representing approximately 31%).

This lawsuit arises from systematic discrimination, denial of promotions, and disparate treatment of African American employees at ACSO. Plaintiffs, despite possessing superior training, experience, and qualifications, were repeatedly passed over for promotions in favor of less qualified white counterparts. Plaintiffs also endured unequal treatment, lack of respect, and a hostile work environment compared to similarly situated white employees.

The discriminatory climate at ACSO extends beyond Plaintiffs. Other African American employees have disclosed similar experiences of racism and unfair treatment but remain silent out of fear of retaliation and termination. Those who continue to work at ACSO do so under constant fear of reprisal. Plaintiffs, however, bring this action to break that silence and challenge a pervasive system of discrimination and racism entrenched in ACSO's leadership and practices.

This system is reinforced by a broader infrastructure of law enforcement agencies that collaborate to blacklist deputies with strong records and qualifications once they are terminated by ACSO, effectively barring them from future employment opportunities in law enforcement. Many deputies, unable to overcome these unlawful barriers, have been forced to abandon their law enforcement careers altogether.

ACSO has a documented history of disregard for racial equity and civil rights. Notable examples include:

- In November 2022, Reverend Gregory Drumwright and other civil rights protesters filed suit against ACSO and the Graham Police Department for restricting protest at the Confederate monument, alleging violations of the Voting Rights Act through dispersal orders and use of pepper spray to suppress voters' ability to march to the polls.

- In October 2022, ACSO was named in a pending lawsuit, along with the Graham Police Department and Hall River Police Department, for multiple constitutional violations during 2019 protests.

- In June 2023, ACSO was sued for civil rights violations against a Black Lives Matter protester stemming from 2020 demonstrations.

- Several years earlier, a high-ranking ACSO employee created a video game depicting the shooting of Mexicans crossing the U.S. border, which drew public attention and further evidenced the agency's tolerance of racist conduct.

These public incidents mirror the internal discriminatory practices experienced by Plaintiffs and other African American employees, including systemic barriers to

advancement, disparate treatment, and a hostile work environment. This complaint seeks to hold Defendants accountable for these violations and to dismantle the entrenched pattern of racism and discrimination within ACSO.

## I. JURISDICTION AND VENUE

1. This action arises under federal law, including 42 U.S.C. §1981, 42 U.S.C. §1983, and other statutes prohibiting employment discrimination.

2. Jurisdiction is proper under 28 U.S.C. §§1331 and 1343.
3. Venue is proper in this District pursuant to 28 U.S.C. §1391, as the events giving rise to this complaint occurred within this District.

## II. PARTIES

4. Plaintiff: Earl Alston, an employee/applicant of Defendant, residing in Haw River, North Carolina.
5. Defendant Terry S. Johnson ("Sheriff Johnson") is the duly elected Sheriff of Alamance County. At all times relevant, Sheriff Johnson acted under color of state law in his official capacity as Sheriff. Sheriff Johnson is sued herein in both his official capacity as Sheriff of Alamance County and his individual capacity for actions taken personally and in concert with other supervisory officials that violated Plaintiff's constitutional and statutory rights.

6. Defendant: Alamance County Sheriff's Office, a county agency doing business in Graham, North Carolina.

## III. FACTUAL BACKGROUND

6. Plaintiff Earl Alston began working for Defendant on or about March 2015 in the position of Patrol Deputy. Plaintiff performed his job duties satisfactorily and consistently met Defendant's legitimate performance expectations. Plaintiff is an African American male, a member of a protected class, who has been subjected to discriminatory conduct throughout his employment.

7. Plaintiff has served as a law enforcement officer for approximately twenty-four years. He began his career with the Mebane Police Department as a patrol officer before transferring to the Hillsborough Police Department in Hillsborough, North Carolina.

8. During his tenure with the Hillsborough Police Department, Plaintiff obtained numerous certifications and specialized training, including Intox, Radar, General Instructor training, Subject Control and Arrest Techniques (SCAT)—becoming one of only 325 SCAT instructors in the state at that time. He is a 23-year certified SWAT operator, a Traffic Crash

Reconstructionist, and has extensive training in fatal and undetermined crash investigations.

9. Plaintiff also completed multiple supervisor and leadership courses, was promoted to Patrol Sergeant (skipping the rank of Corporal due to his qualifications), and later assumed the role of Lieutenant during a colleague's extended training assignment. In these roles, Plaintiff supervised up to 20 patrol officers and successfully managed divisional operations.

10. After more than fourteen years in Hillsborough, Plaintiff transferred to the Alamance County Sheriff's Office, where he initially served as a patrol deputy before being selected as a Detective in the Major Crimes Division. In this capacity, Plaintiff investigated serious offenses including larceny, assaults, robberies, fraud, and homicide/suicide cases. He was frequently called upon to assist with cold case homicides and complex investigations due to his expertise.

11. Despite his extensive qualifications and exemplary service record, beginning on or about March 2015, Plaintiff was subjected to discriminatory treatment and a hostile work environment during his ten-year tenure with the Alamance County Sheriff's Office.

12. Plaintiff personally witnessed and was subjected to racially discriminatory conduct, including:

   a. Hearing racially offensive statements from a deputy in or around June 2020.

   b. Being forced by Lt. Curtis Morris to move into an office contaminated with mold, while other investigators were permitted to relocate to safer, cleaner, and more spacious offices.

13. Plaintiff was denied promotional opportunities on multiple occasions in favor of less experienced, less qualified white investigators. For example, after requesting transfer back to the Investigations Division, Plaintiff was willing to accept a demotion from Sergeant to Corporal. Instead, he was stripped of his rank and pay, while the Corporal position was awarded to a white investigator with less than two years of investigative experience compared to Plaintiff's six years.

14. Plaintiff's treatment was inconsistent with Defendant's practices, as other deputies transferring between divisions typically retained their rank or were demoted only one level absent disciplinary issues. Plaintiff was further discouraged from applying for promotions after Captain (later Major) Curtis Morris—who had supervised Plaintiff for four years—stated that Plaintiff was "not who he was looking for."

15. Plaintiff also observed systemic racial disparities within the Alamance County Sheriff's Office and the broader community:

   a. Minority protestors were treated differently than white protestors during demonstrations concerning the Confederate monument.

   b. Minority employees in specialized divisions were routinely capped at the rank of Corporal, while higher ranks were reserved for white employees.

   c. Although some minority employees in the detention center held ranks as high as Lieutenant, those positions were limited to jail security roles without arrest authority, reflecting a pattern of diminished opportunities for advancement.

16. Plaintiff's experiences are consistent with numerous citizen complaints of racism against the Alamance County Sheriff's Office, particularly from Latino and African American residents.

17. Plaintiff further observed that minority ranking officers were not respected as supervisors, and their decisions were routinely overruled by higher-ranking superiors. This lack of respect for minority leadership was not limited to Plaintiff's own experience. Plaintiff's wife, who served as a Lieutenant at the Alamance County Sheriff's Office, was consistently undermined in her supervisory role. She was stripped of authority to make

decisions, leaving her powerless as a supervisor. The mistreatment by her superiors became so severe that she ultimately resigned her position and vowed never to work in law enforcement again.

18. Plaintiff continues to work at the Alamance County Sheriff's Office but has lost trust and faith in law enforcement due to the discriminatory treatment he and his wife endured. Plaintiff strives to remain professional, but working under the same supervisors who mistreated his wife makes it difficult to maintain positivity. Plaintiff has more supervisory experience and training from his prior agencies than nearly all of the supervisors he has been assigned to at the Alamance County Sheriff's Office, with the exception of two retired officers. Plaintiff's previous Sergeant has even acknowledged Plaintiff's superior judgment, often asking whether Plaintiff would be working on days or nights when the Sergeant was off duty, stating that he felt more confident knowing Plaintiff was present to handle major cases and make sound decisions.

19. In April 2017, Plaintiff and his immediate supervisor, Sgt. McVey, attended a homicide investigation school in Randolph County. During the training, Sgt. McVey received a text message from Lt. Curtis Morris asking if any detectives wanted to move into a newly vacant office. Sgt. McVey

encouraged Plaintiff to move, warning that Plaintiff's current office was unsafe due to mold contamination. Plaintiff agreed and moved his belongings into the vacant office with the assistance of Sgt. Chris Shoffner, head of maintenance.

20. Shortly thereafter, Plaintiff was told by Sgt. McVey that Lt. Morris did not want Plaintiff to have the office and ordered him to move back into the mold-infested space. Maintenance later confirmed that the mold was caused by leaking toilet water from the detention area. Sgt. Shoffner remarked that he had seen similar discriminatory behavior before and believed Plaintiff was being targeted because he was Black. Although Shoffner attempted to remediate the mold, the problem persisted, covering a quarter of the ceiling and spreading down the wall behind Plaintiff's desk. Plaintiff was forced to work in these hazardous conditions for approximately five months, losing important documents and training materials to mold damage, until maintenance eventually closed the office and replaced the piping.

21. In late 2020, during the Black Lives Matter era, Plaintiff was asked to accept the rank of Sergeant in the Patrol Division. Although this was not his desired position, Plaintiff accepted out of respect for the patrol commander and agreed to serve for one year. After approximately ten months, in September

2021, Plaintiff met with Lt. Brad Hall, the new lieutenant over the Criminal Investigations Division (CID), to request a transfer back to CID.

22. Lt. Hall expressed enthusiasm about Plaintiff's return and stated that he would recommend Plaintiff for the open Corporal position in CID. Lt. Hall further explained that he would attempt to preserve some of Plaintiff's Sergeant-level pay but cautioned that the decision rested with Major Curtis Morris, who oversaw CID and other investigative divisions.

23. Approximately one week later, Plaintiff was transferred back to CID; however, the Corporal position was awarded to Investigator Kenneth Brown, a white officer with fewer years of investigative experience and less training than Plaintiff. Plaintiff was instead demoted to the rank of basic investigator, losing both rank and pay. This treatment was inconsistent with Defendant's usual practice, as deputies who voluntarily transferred divisions were typically granted the next rank lower than their current position. Plaintiff's demotion was a departure from standard practice and reflected discriminatory treatment.

## IV. CLAIMS FOR RELIEF

### First Claim For Relief

**Violation of 42 U.S.C. §1981 (Race Discrimination in Employment Contracts)**

19. Plaintiff is an African American male and a member of a protected class.

20. Defendant intentionally discriminated against Plaintiff on the basis of race by denying him equal rights to make and enforce contracts, including employment contracts, promotions, rank, and compensation.

21. Defendant's conduct included stripping Plaintiff of rank and pay, denying him promotions in favor of less qualified white employees, forcing him to work in unsafe conditions, and undermining his supervisory authority.

22. Defendant's actions violated Plaintiff's rights under 42 U.S.C. §1981.

**Second Claim For Relief**

**Violation of 42 U.S.C. §1983 (Equal Protection and Due Process Under Color of Law)**

23. Defendant, acting under color of state law, deprived Plaintiff of rights secured by the Constitution, including the Equal Protection Clause of the Fourteenth Amendment.

24. Defendant's discriminatory practices included disparate treatment of minority officers, denial of promotions, unsafe working conditions, and systemic disrespect of minority supervisors.

25. Defendant's conduct constitutes a violation of Plaintiff's constitutional rights actionable under 42 U.S.C. §1983.

**<u>Third Claim For Relief</u>**

**Title VII of the Civil Rights Act of 1964 (Race Discrimination, Hostile Work Environment, Retaliation)**

26. Plaintiff filed a timely charge of discrimination with the EEOC and received a Right-to-Sue Letter.

27. Defendant discriminated against Plaintiff on the basis of race, subjected him to a hostile work environment, and retaliated against him for engaging in protected activity. The protected activity was the Plaintiff's original filing of him filling his EEOC complaint.

28. Defendant's conduct violated Title VII, 42 U.S.C. §2000e et seq.

**<u>Fourth Claim For Relief</u>**

**Equal Pay Act (29 U.S.C. §206(d))**

29. Defendant compensated Plaintiff less than similarly situated white employees performing equal work requiring equal skill, effort, and responsibility.

30. Defendant's conduct violated the Equal Pay Act.

**<u>Fifth Claim For Relief</u>**

### Retaliation (All Applicable Statutes)

31. Plaintiff engaged in protected activity by opposing discriminatory practices and requesting fair treatment in promotions and assignments.

32. Defendant retaliated against Plaintiff by denying promotions, stripping rank and pay, and subjecting him to unsafe and hostile working conditions.

33. Defendant's conduct constitutes unlawful retaliation under §1981, Title VII, and §1983.

### <u>Sixth Claim For Relief</u>

### Pattern and Practice of Racial Discrimination (Systemic Claim)

34. Defendant has engaged in a pattern and practice of racial discrimination against minority employees, including capping minority officers at lower ranks, undermining minority supervisors, and treating minority protestors more harshly than white protestors.

35. Plaintiff's experiences are consistent with systemic racial bias within the Alamance County Sheriff's Office.

36. Defendant's conduct constitutes a violation of §1981, §1983, and Title VII.

## V. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

1. Declare Defendant's conduct unlawful;
2. Award compensatory damages for lost wages, emotional distress, and other harms;
3. Award punitive damages where permitted;
4. Order injunctive relief, including reinstatement, promotion, or policy changes to eliminate discriminatory practices;
5. Award attorney's fees and costs pursuant to 42 U.S.C. §1988 and other applicable statutes;
6. Grant such other relief as the Court deems just and proper.

## VI. JURY DEMAND

Plaintiff demands a **trial by jury** on all issues so triable.

**By: /s/ Jason L. Keith**
**Jason L. Keith, Esq.**
**Attorney for Plaintiff**
**NXTGEN LAW**
**100 S.Elm Street,Ste.110**
**Greensboro, NC 27401**
**(336) 574-0368**
**NC Bar No.: 34038**